Jason L. Solotaroff  (JS-5739)
GISKAN & SOLOTAROFF
207 West 25th Street, 4th Floor
New York, New York 10001
Tel. (212) 847-8315
Fax  (212) 473-8096
jsolotaroff@gslawny.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

NEELU PAL, M.D.,

        Plaintiff,                                              06  CV 5892 (BSJ)

          v.                                                **COMPLAINT**

NEW YORK UNIVERSITY,                                          Jury Trial Demanded


        Defendant.

---------------------------------------------------------------x

## INTRODUCTION

1.     This is an action brought under the diversity jurisdiction of this Court by Dr. Neelu Pal against her former employer, New York University School of Medicine, an administrative unit of Defendant New York University (both referred to hereafter as "NYU").  Dr. Pal, who was employed as a Fellow in the laparoscopic surgery program, alleges that A) NYU misrepresented the nature of the laparoscopic fellowship program and thereby induced Dr. Pal to accept employment in the fellowship program and thereby forfeit other valuable opportunities;

and B) NYU wrongly terminated Dr. Pal's employment in retaliation for her good faith disclosures relating to the failures of NYU's laparoscopic surgery practice to ensure patient safety – failures that Dr. Pal believed contributed to the death of a patient.

## JURISDICTION AND VENUE

2. This Complaint is filed and these proceedings are instituted under the diversity jurisdiction of this Court, 28 U.S.C. §1332, as the matter in controversy exceeds $75,000 and the parties are citizens of different states.

3. Venue is properly before this Court pursuant to 28 U.S.C. §1391(a) is that the Defendant resides in this district and a substantial part of the events giving rise to the claim occurred in this district.

## THE PARTIES

4. Plaintiff, Neelu Pal, is a citizen of India. She is a Permanent Resident of the United States and is domiciled in New Jersey.

5. Defendant New York University is a non-profit entity organized under the laws of New York with its principal place of business in New York City.

## THE FACTS

6. Dr. Pal completed medical school training and attended a post graduate training program in India. In 1998, Dr. Pal moved to the United States and took and passed the USMLE and CSA examinations which permitted her to enter a United States residency program. From 2000 to 2001, Dr. Pal completed a one year obstetrics and gynecology residency at the University of Kansas Medical Center. From 2001 until June 2005, Dr. Pal completed a four year surgical residency program at the University of Medicine and Dentistry of New Jersey.

2

7. In approximately November 2004, while a resident of New Jersey, Dr. Pal investigated fellowship programs in laparoscopic surgery. Fellowship programs provide additional training and expertise in a subspecialty.

8. Dr. Pal investigated laparoscopic fellowship programs by reviewing listings contained on a website operated by the Fellowship Council, an organization involved in the dissemination of information about, and the selection of physicians for, various minimally invasive surgery fellowships.

9. The listing for the NYU fellowship stated that the laparoscopic practice at NYU, of which the fellow would be a part, performed a wide range of advanced laparoscopic procedures including colon resections, hernia repairs, gastric bypass procedures as well as bariatric ("weight loss") procedures such as gastric band insertions.

10. Dr. Pal also interviewed with Dr. Christine Ren, the director of the fellowship program, and Dr. George Fielding, Dr. Ren's partner in the laparoscopic practice at NYU.  Dr. Ren and Dr. Fielding told Dr. Pal during the interview that their practice performed a wide range of laparoscopic procedures and that she would learn to perform these procedures if she were selected for the fellowship.

11. Candidates are chosen for fellowship programs by way of a matching program administered by the Fellowship Council.  The matching program permits candidates for fellowship programs and the programs themselves to rank their preferences and then matches candidates and fellowship programs according to these preferences.

12. Primarily because of the representations by Drs. Ren and Fielding and on the Fellowship Council website regarding the breadth of experience that the NYU fellowship would

3

offer, Dr. Pal ranked the NYU fellowship very high in the matching program. Dr. Pal ranked the NYU program ahead of other fellowships, such as a program offered by the University Medical Center in Princeton, New Jersey which only offered training and experience in bariatric ("weight loss") procedures.

13. Dr. Pal was selected for the NYU fellowship and accepted it. She began working at NYU in October 2005.

14. After beginning to work at NYU, Dr. Pal learned that NYU, Dr. Ren and Dr. Fielding had misrepresented the essential nature of the fellowship. Contrary to the representations on the website and in Dr. Pal's interview, the laparoscopic practice at NYU almost exclusively involved the insertion of gastric bands – a bariatric procedure. Dr. Pal had no opportunity to develop experience or expertise in other types of laparoscopic procedures.

15. Of even greater concern to Dr. Pal was the cavalier way in which Dr. Ren and Dr. Fielding cared for their patients.

16. Contrary to regulations promulgated by the New York State Department of Health, Dr. Ren and Dr. Fielding failed to ensure that patients gave informed consent prior to the operation. Based on the sheer number of patients scheduled on each operating day, there was simply not time to obtain informed consent from each of the patients. In addition, there was not time for the medical staff to obtain accurate medical histories for the patients. This was particularly important given that the grossly obese patients who were candidates for the gastric band insertion often had life threatening conditions such as sleep apnea. Dr. Pal repeatedly was asked to write out post-operative instructions on patients that she had not seen and whose medical histories she had not reviewed.

17. Following the surgeries, again in violation of regulations promulgated by the New York State Department of Health, Dr. Ren and Dr. Fielding failed to ensure appropriate post-operative care for the patients. They relied on NYU's surgical residents, who, for reasons that were never disclosed to Dr. Pal, often refused to care for the patients of Dr. Ren and Dr. Fielding. In addition, Dr. Ren and Fielding frequently failed to return phone calls from the hospital when they were on call. Failing to ensure care for a patient constitutes physician misconduct under New York law.

18. The failure of Dr. Ren and Dr. Fielding to observe appropriate patient care standards posed substantial and specific danger to the health of their patients.

19. Dr. Pal repeatedly advised Dr. Ren and Dr. Fielding of the aforementioned problems with patient care without any changes being made.

20. In January 2006, a patient of Dr. Fielding's died following surgery. Dr. Pal believed the failure of Dr. Ren and Dr. Fielding to ensure proper post-operative care had contributed to the death.

21. Shortly after the death of Dr. Fielding's patient, a situation arose with another patient who suffered from severe post-operative complications. Dr. Fielding left the seriously ill patient to attend a basketball game.

22. By January 21, 2006, Dr. Pal had become seriously concerned about the welfare of patients scheduled to be operated on by Drs. Ren and Fielding. She had repeatedly expressed her concerns to Drs. Ren and Fielding without any improvements in patient care. She phoned the patients scheduled for surgery the following day to warn them of the risks of the surgery and to

5

inform them that there had been a recent death.  She encouraged the patients to request additional information from Drs. Ren and Fielding and NYU administration.

23. On January 24, 2006, Dr. Pal met with Dr. Carol Bernstein, NYU's director of Graduate Medical Education.  Dr. Pal informed Dr. Bernstein about her concerns relating to the improper quality of care provided by Drs. Ren and Fielding.

24. On January 25, 2006, Dr. Pal was suspended by NYU.  On February 21, 2006, Dr. Pal was terminated by NYU.

AND FOR A FIRST CAUSE OF ACTION
(Fraudulent Inducement Under New Jersey Law)

25. Dr. Pal restates the allegations of Paragraphs 1 through 24.

26. Defendants represented to Dr. Pal, a New Jersey resident, that the NYU laparoscopic fellowship offered training and experience in a wide range of laparoscopic procedures. These representations were made in a website listing concerning the fellowship and, by Drs. Ren and Fielding, during an in-person interview with Dr. Pal.

27. The representations were knowingly false as the Defendants knew that the fellowship only offered training and experience in gastric band surgery, a bariatric procedure.

28. The representations were made with the intent that Dr. Pal and other fellowship candidates would rely on them in their decisions relating to the rankings of fellowship programs.

29. Dr. Pal relied on the misrepresentations by ranking the NYU program ahead of fellowships which had truthfully represented that their practice involved exclusively bariatric surgery.

30. Dr. Pal was damaged in that, absent the misrepresentations, she would have matched into another fellowship program which she would have completed. Had she completed the other fellowship program, she would have earned salary and benefits she did not receive after being dismissed from NYU's fellowship program. In addition, completion of an advanced laparoscopic surgery fellowship provides a physician with employment and compensation not available to physicians who have not completed such a fellowship. Dr. Pal will suffer damages in the future attributable to her inability to complete, or her delay in completing, an advanced laparoscopic surgery fellowship program.

AND FOR A SECOND CAUSE OF ACTION
(Retaliatory Discharge In Violation of N.Y. Labor Law §741)

31. Dr. Pal restates the allegations of Paragraphs 1-30.

32. Dr. Pal, an employee of Defendant New York University, disclosed to a supervisor policies and practices of New York University, which she reasonably believed posed substantial and specific danger to public health or safety and significant threat to the health of specific patients, namely those patients scheduled for bariatric surgery at New York University Medical Center and which constituted improper quality of patient care within the meaning of New York Labor Law §741(1)(d).

33. Dr. Pal also conveyed to patients her objections to the policies and practices of New York University, which she reasonably believed constituted improper quality of patient care within the meaning of New York Labor Law §741(1)(d).

34.     In retaliation for Dr. Pal's disclosures and objections, New York University retaliated against her by suspending and eventually terminating her employment in violation of N.Y. Labor Law §741.

**WHEREFORE**, Plaintiff demands judgment:

A.     On the First Cause of Action, awarding Dr. Pal compensatory damages;

B.     On the First Cause of Action, awarding Plaintiff punitive damages;

C.     On the Second Cause of Action, enjoining NYU from continuing to violate N.Y. Labor Law §741;

D.     On the Second Cause of Action, reinstating Dr. Pal to her former position or an equivalent position;

E.     On the Second Cause of Action, the reinstatement of full fringe benefits and seniority rights;

F.     On the Second Cause of Action, compensation for lost wages, benefits and other remuneration;

G.     On the Second Cause of Action, payment by the employer of reasonable costs, disbursements, and attorney's fees; and,

H.     Granting such other legal and equitable relief as the Court may deem just and equitable

Dated:     New York, New York
           August 1, 2006

GISKAN & SOLOTAROFF

By:    _____
          Jason L. Solotaroff (JS-5739)
          207 West 25th Street, 4th Floor
          New York, New York  10001
          212-847-8315

          ATTORNEYS FOR PLAINTIFF

## JURY DEMAND

Plaintiff demands trial by jury of all issues as of right by a jury.

Dated: New York, New York
      August 1, 2006

                                  GISKAN & SOLOTAROFF

                                  _____
          By:    Jason L. Solotaroff (JS-5739)
                207 West 25th Street, 4th Floor
                New York, New York  10001
                212-847-8315

                ATTORNEYS FOR PLAINTIFF