UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NEELU PAL, M.D.,                                  :
                                                  :
                Plaintiff,              :
                                                  :   06 Cv. 5892 (PAC) (FM)
                v.                      :
                                                  :   <u>ORDER</u>
NEW YORK UNIVERSITY,                              :
                                                  :
                Defendant.              :
------------------------------------------------------------------------x

HON. PAUL A. CROTTY, UNITED STATES DISTRICT JUDGE:

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant New York University ("NYU") moves to dismiss Plaintiff Neelu Pal's first cause of action for fraudulent inducement. For the reasons set forth below, Defendant's motion is GRANTED.[1]

## BACKGROUND

Plaintiff, Neelu Pal ("Pal"), completed medical school in India.[2] In 1998, Pal moved to the United States and passed the requisite exams permitting her to enter a United States medical residency program. (Compl. ¶ 6.) From 2000 to 2001, Pal attended a one-year obstetrics and gynecology residency program at the University of Kansas Medical Center. From 2001 to 2005, Pal completed a four-year surgical residency program at the University of Medicine and Dentistry of New Jersey. (Id.)

In approximately November 2004, Pal looked into several fellowship programs in laparoscopic surgery. (Id. ¶ 7.) Pal asserts that she investigated the fellowship programs by reviewing listings on a website administered by The Fellowship Council, an online clearinghouse

---

[1] This case was initially assigned to Judge Barbara S. Jones. After Defendant's motion was made, the case was reassigned to this Court. The Court has considered the entire file, as well as all the papers on this motion to dismiss.
[2] In reviewing a motion to dismiss, the Court must accept as true the facts alleged in the plaintiff's complaint. See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir. 1996); O'Brien v. Alexander, 101 F.3d 1479, 1484 (2d Cir. 1996).

- 1 -

of surgical fellowhips.  (Id. ¶ 8.)  On the website, she found a listing for a fellowship at NYU, which advertised training in a variety of laparoscopic procedures, including colon resections, hernia repairs, gastric bypass, and gastric band insertions (a bariatric procedure).  (Id. ¶ 9.)

Pal applied to the NYU program and interviewed with Dr. Christine Ren, the director of the fellowship program, and Dr. George Fielding, Dr. Ren's partner in the laparoscopic practice.  According to Plaintiff, at the interview she was told that the NYU program would offer her the opportunity to learn a variety of laparoscopic procedures.  (Id. ¶ 10.)  Plaintiff asserts that "because of the representations by Drs. Ren and Fielding and on The Fellowship Council website regarding the breadth of experience that the NYU fellowship would offer, [Pal] ranked the NYU fellowship very high in the matching program."  (Id. ¶ 12.)  Pal was selected for, and accepted, the fellowship and began working at NYU in October 2005.  (Id. ¶ 13.)

Pal alleges that shortly after she began working at NYU, she realized that contrary to the representations made by Drs. Ren and Fielding at the interview, the NYU program did not offer a wide range of surgical procedures.  Instead, the NYU program focused heavily on gastric band insertions and did not give Pal the "opportunity to develop experience or expertise in other types of laparoscopic procedures."  (Id. ¶ 14.)

Pal also became concerned for the care and treatment of some of the patients in the program.  (Id. ¶ 15.)  Pal asserts that Drs. Ren and Fielding cared for their patients in a "cavalier" manner (id.), and failed to "observe appropriate patient care standards[, which] posed substantial and specific danger to the health of their patients" (id. ¶ 18).  Pal "repeatedly advised Drs. Ren and Fielding of the aforementioned problems with patient care," but no changes were made.  (Id. ¶ 19.) According to Pal, by January 21, 2006, she was "seriously concerned about the welfare of patients scheduled to be operated on by Drs. Ren and Fielding," so she phoned several of the

patients scheduled for surgery to warn them of the risks of the impending procedures and to encourage them to request additional information from Dr. Ren, Dr. Fielding, and the NYU administration.  (Id. ¶ 22.)

On January 24, 2006, Pal met with Dr. Carol Bernstein, NYU's Director of Graduate Medical Education, to discuss her concerns relating to the quality of the care provided by Drs. Ren and Fielding.  (Id. ¶ 23.)  The next day, NYU suspended Pal, and on February 21, 2006, NYU terminated Pal's employment in the fellowship.  (Id. ¶ 24.)

On August 4, 2006, Pal filed a complaint against NYU setting forth two causes of action: (1) fraudulent inducement under New Jersey law and (2) retaliatory discharge in violation of New York Labor Law § 741.  (Id. ¶¶ 25-34.)  The Court's jurisdiction is based on diversity of citizenship.  (Id. ¶ 2.)  On September 28, 2006, Defendant moved to dismiss the first cause of action pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted.

## DISCUSSION

### I.  Standard for 12(b)(6) Motion

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted," a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).  Under that standard, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007) (citing Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (once a claim for relief has been stated, a plaintiff "receives the benefit of

imagination, so long as the hypotheses are consistent with the complaint")).  However, a court need not defer to sweeping and unsupported allegations and conclusions of law in evaluating the sufficiency of a complaint.  See Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1092 (2d Cir. 1996); First Nat'l Bank v. Gelt Funding Corp., 27 F.3d 763, 771-72 (2d Cir. 1994).

In deciding a 12(b)(6) motion, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).  Thus, "the office of a motion to dismiss is merely to assess the legal feasibility of a complaint, not to assay the weight of the evidence which might be offered in support thereof."  Eternity Global Master Fund Ltd. V. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).

**II.  Choice of Law**

As an initial matter, the Court must first determine what law applies to the claim alleged.  Plaintiff asserts that New Jersey law should apply to her claim for fraudulent inducement, while Defendant maintains that Plaintiff's claim is subject to New York law.  A federal court sitting in diversity must apply the choice-of-law rules of the forum state.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941).

Under New York choice-of-law rules, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved."  In re Allstate Ins. Co., 613 N.E.2d 936, 937 (N.Y. 1993).  Plaintiff asserts that although the elements of fraud under New York and New Jersey law are essentially the same,[3] unlike New York law, New Jersey law allows her to seek future lost wages and

---

[3] Under New York law, "a plaintiff must show (1) that there was a material, false representation, (2) made with knowledge of its falsity, and (3) an intent to defraud (4) that plaintiff reasonably relies upon, (5) causing the plaintiff

- 4 -

benefits.  In support of this assertion, Plaintiff cites McConkey v. AON Corp., 804 A.2d 572 (N.J. 2002).  (Pl.'s Br. 11-13.)

In McConkey, the New Jersey Supreme Court explained that with respect to employment contracts New Jersey applies a "benefit-of-the-bargain" analysis to calculate damages for claims of fraudulent inducement.  McConkey, 804 A.2d at 587.  Plaintiff alleges that under New Jersey law she can recover (1) the "salary and benefits she did not receive after being dismissed from NYU's fellowship program" and (2) future damages "attributable to her inability to complete, or her delay in completing, an advanced laparoscopic surgery fellowship program."  (Compl. ¶ 30.)  Contrary to Plaintiff's assertion, she can only recover those wages and benefits she would have received under an existing employment contract with NYU -- that is the "benefit-of-the-bargain" -- not those future lost wages and benefits she would receive for a full career extending the length of her life.  McConkey, 804 A.2d at 587.

Nevertheless, there is a difference in the amount of damages Plaintiff can recover under New Jersey and New York law, respectively.  New York allows recovery for only "out-of-pocket" pecuniary damages.  Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1373 (N.Y. 1996).  Under this rule "[d]amages are to be calculated to compensate [Plaintiff] for what [she] lost because of the fraud, not to compensate [her] for what [she] might have gained."  Id.

Because of this potential conflict between New York and New Jersey law, the Court must "[utilize an] interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation."  Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 521 (1994).  "The greater interest is determined by an evaluation of the 'facts or contacts

---

damage."  Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993).  Under New Jersey law, a plaintiff must show that there was "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367, 148 N.J. 582, 610 (1997).

which . . . relate to the purpose of the particular law in conflict.'" Id. (quoting Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 197 (1985)). To determine which jurisdiction has the greater interest, the Court must conduct two separate inquiries: first, the Court must determine "what are the significant contacts and in which jurisdiction are they located;" second, the court must assess "whether the purpose of the law is to regulate conduct or allocate loss." Id.

### A. Significant Contacts

"'[T]he [only] facts or contacts which obtain significance in defining state interests are those which relate to the purpose of the particular law in conflict.'" Schultz, 65 N.Y.2d at 197 (quoting Miller v. Miller, 22 N.Y.2d 12, 16 (1968)). In tort cases, "the significant contacts are, almost exclusively, the parties' domicile and the locus of the tort." Id. Pal contends that her New Jersey domicile is the controlling factor for establishing the first prong of New York's interest analysis.

Contrary to Pal's assertion, the location of Plaintiff's domicile is not dispositive. "[A]lthough the location of [Plaintiff] is the primary consideration in deciding which state's law to apply in a tort case," the court must consider the other contacts which "point away from" applying New Jersey law. Pinnacle Oil Co. v. Triumph Okla. Ltd. P'ship, 1997 WL 362224, at *2 (S.D.N.Y. June 27, 1997). A majority of the relevant contacts giving rise to Plaintiff's cause of action took place in New York. Pal initiated discussions and interviewed with Drs. Ren and Fielding in New York. NYU is located in New York. The NYU fellowship employed Pal in New York. And the alleged fraudulent misrepresentation was purported to have occurred in New York. The only contacts with New Jersey are Plaintiff's domicile and the fact that she viewed The Fellowship Council website in New Jersey.[4] These contacts are insufficient to overcome the number of contacts with New York. Cf. Id. at *2-3. Accordingly, the Court finds

---

[4] The Court notes that the website in question was not owned or operated by NYU but by The Fellowship Council.

that New York has a greater number of significant contacts and, thus, has a greater interest in having its law applied in the present litigation.

### B.  Purpose of the Law:  Conduct Regulation

The second prong of New York's choice-of-law principles requires the Court to determine whether the purpose of the law is to regulate conduct or to allocate losses remedially. Padula, 84 N.Y.2d at 521.  In cases involving conduct-regulating laws, "the locus of the tort will almost always be determinative . . . whereas those cases involving loss allocation will turn in significant part on the domiciles of the parties."  Krock v. Lipsay, 97 F.3d 640, 646 (2d Cir. 1996).

Laws that regulate conduct have the primary purpose of preventing injury.  Padula, 84 N.Y.2d at 522.  "[F]raud . . . [is] based on conduct regulating rules rather than loss allocating rules, and therefore New York courts have usually applied the law of the place of the tort."  Mark Andrew of Palm Beaches, Ltd. v. GMAC Commercial Mortgage Corp., 265 F. Supp. 2d 366, 378 (S.D.N.Y. 2003); see also Krock, 97 F.3d at 646 ("[B]ecause the case at hand concerns laws regulating allegedly fraudulent conduct, the proper body of law to be applied turns on the locus of the tort.").

Pal asserts that because her domicile is New Jersey, the location of the injury is New Jersey.  (Pl.'s Br. 7-8.)  The Court finds that to determine the location of the injury, the more important factors to consider are the location of the conduct giving rise to the fraud claim and the location of the alleged misrepresentation.  As noted above, the alleged misrepresentation occurred in New York, and it was Pal who traveled to New York to interview with Drs. Ren and Fielding.  Thus, New York has a considerable interest in regulating fraudulent activity within its

borders, and as such, it has the greater interest in having the present claim adjudicated under its laws.[5]  Accordingly, New York law governs Plaintiff's claim for fraudulent inducement.

### III.  Plaintiff's Claim for Fraudulent Inducement

In her first cause of action, Plaintiff asserts that she was fraudulently induced to accept the laparoscopic surgery fellowship at NYU.  Under New York law, to state a claim for fraudulent inducement "a plaintiff must show (1) that there was a material, false representation, (2) made with knowledge of its falsity, and (3) an intent to defraud (4) that plaintiff reasonably relies upon, (5) causing the plaintiff damage."  Kregos, 3 F.3d at 665.  Defendant argues that Plaintiff has failed to state a claim for fraudulent inducement because (1) Plaintiff has failed to establish sufficiently recoverable damages and (2) Plaintiff has failed to show a causal relationship between the misrepresentation and the alleged injury.

#### A.  Damages

Under New York law, the "'measure of damages is indemnity for the actual pecuniary loss sustained as a direct result of the wrong' or what is known as the 'out-of-pocket rule.'"  Lama Holding, 88 N.Y.2d at 421 (quoting Reno v. Bull, 226 N.Y. 546, 553 (1919)).  "Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud."  Id.  In other words, "[d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."  Id.

Plaintiff alleges that "absent the misrepresentations, she would have matched into another fellowship program which she would have completed, [and h]ad she completed the other fellowship program, she would have earned a salary and benefits she did not receive after being

---

[5] Because Plaintiff's claim concerns laws regulating allegedly fraudulent conduct, further analysis under the loss-allocation framework is unnecessary.

- 8 -

dismissed from NYU's fellowship program." (Compl. ¶ 30.)  Plaintiff asserts that "completion of an advanced laparoscopic surgery fellowship provides a physician with employment and compensation not available to physicians who have not completed such a fellowship." (Id.) However, such a conclusory and speculative assertion fails to set forth exactly what out-of-pocket damages Plaintiff sustained as a direct result of the alleged misrepresentation.

In Mihalakis v. Cabrini Medical Center, 151 A.D.2d 345 (N.Y. App. Div. 1989), the New York Supreme Court, Appellate Division, was faced with a fraud claim that virtually mirrors the instant case.  In Mihalakis, the plaintiff, Georgia Mihalakis sued Cabrini Medical Center for fraudulently inducing her to accept an internship at the hospital.  Id. at 345-46.  Mihalakis alleged that once she arrived at the internship, she determined that Cabrini had misrepresented the quality of the program in her initial interview.  Id.  According to Mihalakis, she "vociferously registered complaints and undertook other activities to make Cabrini live up to its professional and ethical obligations."  Id. at 346.  Mihalakis was then terminated from her internship.[6]  Id.

In Mihalakis, the court held that "[t]he cause of action for fraud" was improper because there were no "facts from which can be inferred pecuniary, out-of-pocket losses as a direct result of the wrong."  Id.  Plaintiff's loss "would have to be measured by the difference between the value of the internship program provided by defendants and the value of an internship program having the characteristics that defendants represented to plaintiff Cabrini had but did not."  Id.  The court found "it evident that any such measurement must be rejected as speculative."  Id.

In the instant case, Pal asks this Court to proceed where the New York court was unwilling.  Pal seeks to recover lost future wages and benefits that she claims she would have

---

[6] Mihalakis also asserted a breach of contract claim arising from her termination.  Similarly, Plaintiff in the instant case pled a second cause of action for wrongful termination.

received had she completed a laparoscopy program (Compl. ¶ 30), but as in Mihalakis, Pal has failed to assert any facts from which pecuniary, out-of-pocket losses could be inferred.

As stated by the court in Mihalakis, "it would be impermissible speculation to assume that had plaintiff not entered [NYU's] program she would have done better in another [program]." Mihalakis, 151 A.D.2d at 346. Calculating Pal's alleged damages requires the court to compound inference upon inference to derive at an appropriate award: if she had known the true nature of the NYU fellowship, she would have chosen another comparable fellowship; if she had been accepted at an alternate program, and if she had completed that program in good standing, she would have secured lucrative employment. The Court will not engage in such speculation. Accordingly, the Court finds that the damages Pal seeks to recover are not recoverable under New York's out-of-pocket rule.[7]

Plaintiff alternatively argues that the Court need not speculate to determine damages because she is now employed in another laparoscopic surgery fellowship, and thus, her damages stem from the mere delay in completing a fellowship. (Pl.'s Br. 12.) Plaintiff further contends that Mihalakis does not apply because unlike the plaintiff in that case, Pal has entered another program, so "the jury will not be asked to speculate whether she would have, in fact, done better in another training program." (Id.) To infer appropriate damages, however, the Court would still be required to speculate whether Pal would have chosen a different program initially, would have completed it in good standing, and would have subsequently secured lucrative employment such that there was an actual delay in receiving earnings. That Pal has entered a separate program

---

[7] Moreover, Pal fails to allege a specific amount of damages, unlike Mihalakis who asserted $345,324,000 in damages based on a lifetime of prospective earnings for a physician.

since the initiation of litigation does not lessen the inferential burden of determining damages from the alleged misrepresentation.[8]

Thus, even accepting Plaintiff's allegations as true and making all reasonable inferences in her favor, Plaintiff has failed to claim sufficient damages to support her claim for fraudulent inducement under New York law.

### B. Causation

Defendant asserts that Plaintiff has also failed to establish that the damages she claims to have suffered are a direct result of Defendant's alleged misrepresentation. Plaintiff can only recover those damages that are "the direct, immediate, and proximate result of the misrepresentation . . . independent of other causes." Kregos, 3 F.3d at 665. The damages Pal alleges stem primarily from her termination from the fellowship program, not from any fraudulent misrepresentation. Such damages are not the direct, immediate, and proximate result of NYU's alleged misrepresentation.

Plaintiff cites Stewart v. Jackson & Nash, 976 F.2d 86 (2d Cir. 1992), in support of her contention that her damages stem from the fraudulent inducement to accept the NYU fellowship rather than her termination from it. In Stewart, Plaintiff Victoria Stewart alleged that she had been fraudulently induced to accept a position as an attorney at a competing law firm on the promise that she would head a newly-formed environmental law department. Id. at 87. Once there, she discovered the creation of an environmental law department to be a sham, and she was instead assigned to general litigation. Id. She alleged damages that she had "suffered loss of professional opportunity, loss of professional reputation and damage to her career growth and potential." Id. (internal quotations omitted). The Second Circuit agreed, finding that her injuries

---

[8] Even if a delay in earnings could be proven without such impermissible speculation, Plaintiff has failed to show a causal link between the damages she suffered and the alleged misrepresentation by NYU. See infra Part III.B.

"commenced well before her termination and were, in several important respects, unrelated to it." Id. at 88. The court found that Stewart abandoned an established environmental law career when she accepted the job offer at the competing law firm. Id. However, Stewart is distinguishable from the instant case because unlike Stewart, Pal did not give up existing employment -- or in her case, admission to another program -- to become a laparoscopic surgery fellow at NYU.

Moreover, as in Mihalakis, Plaintiff's "future earnings as a doctor were lost not because of any inherent inadequacies in [the] internship program, but because of plaintiff's failure to complete that program." Mihalakis, 151 A.D.2d at 346. Similarly, in the instant case, the link between any fraudulent misrepresentation by NYU and Pal's harm is simply too attenuated to support her assertion of damages. Thus, Pal has failed to allege damages that establish a "causal relationship between the alleged misrepresentations and [her] failure to become a doctor." Id.

**IV. Leave to Amend**

In her opposition to Defendant's motion to dismiss, Pal includes one sentence stating that "if th[e] Court were to conclude that Dr. Pal's damages claim is overly speculative, it should permit her leave to amend [the complaint]." (Pl.'s Br. 12.) If Pal wishes to amend her complaint, she must formally move for leave of court to do so because Defendant has already filed a responsive pleading. See Fed. R. Civ. P. 15(a).

## CONCLUSION

For the aforementioned reasons, defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED, and Plaintiff's first cause of action is dismissed.

Dated: New York, New York
      August 23, 2007

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge