USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 25, 2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                :
NEELU PAL, M.D.,                                :
                                                :
                              Plaintiff,        :   06 Civ. 5892 (PAC) (FM)
                                                :
            - against -                         :   MEMORANDUM
                                                :   OPINION & ORDER
NEW YORK UNIVERSITY,                            :
                                                :
                              Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Neelu Pal, M.D. ("Pal") brings this action against Defendant New York University ("NYU") asserting claims for fraudulent inducement under New Jersey law and retaliatory discharge in violation of N.Y. Lab. Law § 741. Pal's claims, which arise out of her termination as a fellow in the NYU Program for Surgical Weight Loss, have been the subject of two previous decisions of the Court. On August 23, 2007, the Court entered an order dismissing Pal's fraudulent inducement claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On August 20, 2009, the Court entered another order holding that Pal's anonymous phone calls to patients were not protected by § 741 because the calls were not made to a "supervisor" or "public body" as required by the statute. Pal's sole remaining claim is that she was terminated in violation of § 741 because she voiced her concerns regarding the quality of patient care at NYU.

NYU moves for summary judgment on the remaining claim. According to NYU, Pal was suspended and ultimately terminated as a fellow because she made inappropriate phone calls to patients, not because she complained about patient care. NYU also

1

contends that Pal's request for back pay is too speculative and that under § 741 she is not entitled to recover front pay. Finally, NYU moves to strike Pal's request for a jury trial.

At present, the question of whether Pal was terminated because she made inappropriate phone calls or because she expressed her concern over the quality of patient care at NYU is subject to a genuine factual dispute which cannot be resolved as a matter of law. If impermissibly terminated, there is a factual question of the amount of back pay she may be entitled to recover. As a matter of law, Pal is not entitled to recover front pay. Since Pal's claim under § 741 is equitable in nature, she is not entitled to a jury trial. Accordingly, and for the reasons that follow, NYU's motion for summary judgment is GRANTED in part, and DENIED in part. NYU's motion to strike Pal's request for a jury trial is GRANTED and the jury demand is STRICKEN.

## BACKGROUND

**I. Facts**

Familiarity with the facts of this action is assumed in light of this Court's previous decisions, and the decisions of Magistrate Judge Frank Maas to whom the action was referred. See Pal v. New York Univ., No. 06 Civ. 5892(BSJ)(FM), 2007 WL 1522618, at *1-2 (S.D.N.Y. May 22, 2007) (Maas, M.J.); Pal v. New York Univ., No. 06 Civ. 5892(PAC)(FM), slip op. at 1-3 (S.D.N.Y. Aug. 23, 2007) (Crotty, J.); Pal v. New York Univ., No. 06 Civ. 5892(PAC)(FM), 2007 WL 4358463, at *1-3 (S.D.N.Y. Dec. 10, 2007) (Maas, M.J.); Pal v. New York Univ., No. 06 Civ. 5892(PAC)(FM), 2008 WL 2627614, at *1-2 (S.D.N.Y. June 30, 2008) (Maas, M.J.). What follows is a brief statement of the facts relevant to the present motion.[1]

---

[1] Local Rule 56.1(a) requires parties moving for summary to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue

After finishing her residency in New Jersey, on or about October 4, 2005, Pal began working as a fellow in the NYU Program for Surgical Weight Loss under the supervision of Drs. Christine Ren ("Ren") and George Fielding ("Fielding"). According to Pal, soon after arriving at NYU, she became concerned for the safety of the program's patients. Pal testified that her concern was primarily due to incomplete medical histories being prepared for patients prior to surgery, and a lack of attending physicians covering patients staying in the hospital after their surgeries. (Dep. Tr. of Neelu Pal ("Pal Dep.") at 111:4-113:18, Krebs Decl., Ex. 1.) Pal voiced her concerns to Ren and Fielding, (id. at 115:24-116:3), and on December 13, 2005, she sent an email to a number of her superiors, including Ren and Fielding, setting forth some of her concerns. (Pal 12/13/05 email, Krebs Decl., Ex. 50.)

On or about January 12, 2006, Fielding performed bariatric surgery[2] on a female patient at NYU and Pal assisted. Two days later, the patient died while hospitalized for postoperative care. On January 19, 2006, another patient became hypotensive[3] after surgery and at Pal's suggestion was taken back into the operating room to ensure there was no internal bleeding. It was later determined that the patient had suffered an adrenal crisis, which means that the patient lacked certain hormones or steroids. According to

---

to be tried." NYU's 85 page, 315 paragraph, statement of material facts is neither short nor concise. Pal raises numerous objections in her response to NYU's statement and has submitted her own counter-statement of material facts, to which NYU has responded. While the Court declines Pal's request to deny NYU's motion for summary judgment based on its prolix Rule 56.1 statement, (Pl.'s Mem. in Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n") at 13-14), NYU's inability to set forth a concise statement of the allegedly undisputed material facts presages the Court's denial of its motion for summary judgment on liability. Despite the numerous factual disputes evidenced by the parties' opposing statements of material facts, the facts in this section are taken from the uncontested portions of the parties' statements. Where useful, the Court provides citations to relevant exhibits.

[2] NYU explains that "[b]ariatric surgery is used to promote significant weight loss and improvement in obesity-related illness." (Def.'s Rule 56.1 Statement ¶ 29.) Some bariatric surgeries are performed laparoscopically, which requires only a small incision, while others are more invasive. (Id.)

[3] "Hypotensive" is defined as "characterized by low blood pressure or causing reduction in blood pressure." Stedman's Medical Dictionary (27th ed. 2000).

Pal, the adrenal crisis might have been avoided had an adequate preoperative medical history been obtained. (Pal Dep. at 223:10-23.)

Several days later, on Saturday, January 21, 2006, Pal decided to call several patients scheduled to receive bariatric surgery the following Monday. She made the calls from "same day admit" area of an NYU operating room. Pal entered an NYU database to obtain the patients' telephone numbers. She then took it upon herself to call the patients; but did not identify herself or indicate that she was a doctor. During each call, Pal stated that the NYU bariatric program was under review or investigation, that there had been a recent death and that she had witnessed multiple complications. (Pal Dep. at 213-214.) Pal also recommended that the patients talk to their surgeons and hospital administrators before having surgery. (Id.) While Pal contends she made the calls out of concern for the patients' safety, she admits that it is possible that surgery was medically necessary for at least some of the patients she called. (Id. at 219:16.) Pal testified that after making the calls she realized that she could have raised her concerns without calling the patients. (Id. at 226:6-9.) Pal testified further that she did not identify herself when she made the calls because she feared the "repercussions when and if Ren and Fielding found out that I made the[] phone calls." (Id. at 221:5-7.)

Concomitantly with Pal's calls to the patients, the NYU admitting office was contacting patients scheduled for surgery on Monday to remind them of their appointments. In the course of calling the patients, NYU learned that someone had made the anonymous phone calls. Ren, Fielding, and others at NYU were told of the calls, and NYU commenced an investigation into the caller's identity. At some point between Saturday, January 21, 2006, and the end of the day on Monday, January 23, 2006, NYU

determined that the calls had been made from the "same day admit" area of the operating room and that Pal was the only person in the area when the calls were made.

Pal reported for work on Monday morning, January 23, 2006, and participated in a number of surgeries, including surgeries on patients she had called on Saturday. At around noon, Pal told Ren and Fielding she was not feeling well and was allowed to leave work. Upon leaving work, Pal called Dr. Carol Bernstein ("Bernstein"), NYU's assistant dean for graduate medical education, and said that she was upset about something and wanted to meet. They scheduled a meeting for the following day, Tuesday, January 24, 2006. While Pal did not go to work on Tuesday, later in the day she met with Bernstein at Bernstein's office. At the meeting, Pal told Bernstein that she was concerned about patient care at NYU and explained the reasons for her concern. Pal also told Bernstein that she had made the anonymous phone calls on Saturday, which Pal described as "something she shouldn't have done." (Dep. Tr. of Carol Bernstein ("Bernstein Dep.") at 64:10-13, Krebs Decl., Ex. 12.) At the end of the meeting, Bernstein told Pal that she would look into the situation.

On January 25, 2006, the day after Pal met with Bernstein and explained her concerns about patient care, and the fact she had made the anonymous phone calls, Ren, Fielding and other NYU administrators and directors held a meeting to discuss Pal's conduct and determine how to proceed. At the meeting, it was decided that Pal would be suspended for four weeks pending further review of the situation. At another meeting held later that day, with Ren, Fielding, Bernstein and the chair of NYU's department of surgery, Dr. Thomas Riles ("Riles"), Pal was informed of her suspension and handed a letter from Riles explaining that she was being suspended because of the anonymous

5

phone calls. Riles' letter describes Pal's calls to the patients as "an egregious example of unprofessional and irresponsible behavior." (Riles 1/25/2006 Letter, Krebs Decl., Ex. 54.)

Fielding and Ren were initially of the mind to allow Pal to return to work, and on February 4, 2006, Fielding sent an email to Dr. Max Cohen ("Cohen"), the Chief Medical Officer for NYU Medical Center, expressing his and Ren's willingness to afford Pal the opportunity to complete her fellowship. (Fielding Letter 2/4/2006, Krebs Decl., Ex. 53.) But Fielding and Ren's readiness to allow Pal to remain in the fellowship program was short-lived, and on February 9, 2006, Fielding sent Cohen another email revoking his offer "to help Neelu Pal." (Fielding Letter 2/9/2006, Krebs Decl., Ex. 55.) On February 16, 2006, Fielding, Ren, Riles, Cohen and others met to discuss Pal's actions and her future at NYU. After everyone at the meeting expressed their views on how to proceed, they unanimously agreed that Pal should be terminated. Approximately five days later, Pal received a letter from Riles dated February 21, 2006, stating that she was dismissed from the NYU fellowship program as of February 22, 2006. (Riles 2/21/2006 Letter, Krebs Decl., Ex. 57.) Pal appealed both her suspension and termination, and following a hearing both actions were upheld.

## II. Pal's Remaining Claim

Pal commenced this law suit on August 6, 2006. Her Complaint asserts two claims, one for fraudulent inducement and the other for retaliatory discharge under N.Y. Lab. Law § 741. As noted, the fraudulent inducement claim has been dismissed, and the Court has rejected Pal's contention that the anonymous phone calls she made constitute protected activity under § 741. Pal's remaining claim is that NYU's proffered reason for

6

ending her fellowship – the improper anonymous phone calls – is pretextual. According to Pal, she was suspended and then terminated because she complained about patient care to her supervisor, Bernstein. (Compl. ¶ 32.)

## DISCUSSION

**III. Standard of Review for a Motion for Summary Judgment**

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The evidence on each material element must be sufficient to entitle the movant to relief as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

Once the moving party has made an initial showing that no genuine issue of material fact remains, the nonmoving party may not refute this showing solely by means of "[c]onclusory allegations, conjecture, and speculation," Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (internal citations and quotations omitted), but must instead present specific evidence in support of its contention that there is a genuine dispute as to material facts. Fed. R. Civ. P. 56(e). The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)).

**IV. Liability**

Section 741 of the New York Labor Law, also known as "New York's Health Care Whistleblower Law," prohibits employers from taking "retaliatory action" against an employee "because the employee . . . discloses or threatens to disclose to a supervisor, or to a public body an activity, policy, or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care[.]" N.Y. Lab. Law § 741(2)(a). It is undisputed that NYU is an "employer," and that Pal was an "employee," within the meaning of § 741. See § 741(1)(a),(b). Pal's suspension and discharge are both within § 741's definition of "retaliatory action." See § 741(1)(f). The parties have stipulated that NYU will not contest the issue of whether Pal had a "reasonable, good faith belief" that NYU was engaging in "improper quality of patient care" when she disclosed her concerns about patient care to Bernstein on January 24, 2006. (Stipulation, Krebs Decl., Ex. 75.) The only question, then, is, whether Pal was suspended and then discharged because of the anonymous phone calls, or because of her complaints about patient care to Bernstein. To withstand NYU's motion for summary judgment, Pal need only show that this question raises a genuine issue of material fact. Pal has made such a showing; and accordingly, NYU's motion for summary judgment on the issue of liability must be denied.

Each party contends that the other party bears the burden of proof to show, or show the absence of, a causal relationship between Pal's protected disclosures to Bernstein and her suspension and termination. Section 741(5) provides that "it shall be a defense that the personnel action was predicated upon grounds other than the employee's exercise of any rights protected by this section." In the context of construing a

substantially identical provision in N.Y. Lab. Law § 740, which prohibits similar retaliatory employment actions outside the patient care context,[4] this Court has noted that "the affirmative defense afforded employers under Section 740(4)(c) indicates that the burden of proof lies with the employer to show a lack of causal connection between the employee's protected conduct and the employer's adverse personnel action." Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 374 (S.D.N.Y. 2003). But, even if Pal is required show a causal connection, she has raised genuine issues of material fact as to whether her suspension and termination were precipitated by her complaints about patient care to Bernstein.

First, there is a question of when NYU, and particularly Fielding and Ren, discovered that Pal was the one who made the calls to patients. Pal has offered evidence which tends to show that even after Ren was told that Pal was the only one who could have made the anonymous phone calls, Ren took no action against her, until after Pal disclosed her concerns about patient care to Bernstein. Second, the fact that Fielding and Ren were initially willing to allow Pal to complete her fellowship undermines NYU's argument that the phone calls were so egregious that it is beyond dispute that they were the sole reason for Pal's suspension and discharge. Third, it is unclear who ultimately decided to terminate Pal, and the extent of Fielding and Ren's influence on the decision. Fourth, Pal has submitted evidence that other NYU employees committed infractions, which are arguably similar to Pal's phone calls, but who were not suspended or discharged. Finally, and perhaps most importantly, Pal's simultaneous disclosure to

---

[4] N.Y. Lab. Law § 740, New York's so-called "Whistleblower Law," prohibits employers from taking retaliatory personnel action against employees who, among other things, disclose "to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud . . . ." § 740(2)(a).

9

Bernstein of her concerns about patient care and the fact that she made the phone calls precludes a determination, as a matter of law, that NYU suspended and terminated Pal for one reason or the other. Since questions of fact remain as to NYU's reason for suspending and terminating Pal, NYU's motion for summary judgment on the issue of liability must be denied.

**V. Front Pay**

Section 741 does not create its own private right of action, instead "Labor Law § 741 contemplates enforcement through a Labor Law § 740(4) civil suit." Reddington v. Staten Island Univ. Hosp., 11 N.Y.3d 80, 89, 893 N.E.2d 120, 125 (2008); see § 741(4). Section 740(5), which lists the relief available in actions brought under §§ 740 and 741, provides:

> In any action brought pursuant to subdivision four of this section, the court may order relief as follows:
>
> (a) an injunction to restrain continued violation of this section;
>
> (b) the reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position;
>
> (c) the reinstatement of full fringe benefits and seniority rights;
>
> (d) the compensation for lost wages, benefits and other remuneration; and
>
> (e) the payment by the employer of reasonable costs, disbursements, and attorney's fees.

§ 740(5); see also § 740(4)(d) (health care employee suing for violation of § 741 may institute action for relief provided for in § 740(5)). Pal contends that she is entitled to recover front pay because § 740(5)(d) provides for recovery of "lost wages . . . and other remuneration." The weight of authority is, however, against Pal's contention. See Kraus

v. New Rochelle Hosp. Med. Ctr., 216 A.D.2d 360, 365, 628 N.Y.S.2d 360, 364 (2d Dep't 1995) (holding that § 740(5) "does not authorize recovery of future lost wages and future lost benefits."); Hoffman v. Altana, Inc., 198 A.D.2d 210, 210 , 603 N.Y.S.2d 499, 500 (2d Dep't 1993) (holding that the relief set forth in § 740(5) is exclusive and that the statute "does not authorize recovery for loss of anticipated lost wages . . . ."); Scaduto v. Rest. Assocs. Indus., Inc., 180 A.D2d 458, 460, 579 N.Y.S.2d 381, 382 (1st Dep't 1992) ("Labor Law § 740 *only* provides for equitable relief which mandates back pay, but, no more.").

While the New York Court of Appeals has never addressed the question of whether front pay can be recovered under § 740(5), "[t]he holding of 'an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Michalski v. The Home Depot, Inc., 225 F.3d 113, 116 (2d Cir. 2000) (quoting West v. AT&T, 311 U.S. 223, 237 (1940)). Pal's cases in support of her request for front pay are not convincing that the Court of Appeals would reject the teachings of Kraus, Hoffman, and Scaduto. Indeed, in Collette v. St. Luke's Roosevelt Hospital, 132 F. Supp. 2d 256 (S.D.N.Y. 2001), a case relied on by Pal for the proposition that the § 740(5) should be broadly construed, this Court pointed out the "narrow scope of the statutory right and remedy" provided for in § 740, and noted that "[r]elief available under the Act . . . is limited to specifically-defined statutory remedies." Collette, 132 F. Supp. 2d at 268. Further, "under New York law . . . [front pay] is a legal remedy to be determined by a jury." Quinby v. WestLB AG, No. 04 Civ. 7406(WHP), 2008 WL 382695, at *6 (S.D.N.Y. Aug. 15, 2008); see also Jattan v.

Queens Coll. of City Univ. of New York, 64 A.D.3d 540, 542, 883 N.Y.S.2d 110, 113 (2d Dep't 2009). Yet, § 740(5) explicitly provides that relief is to be ordered by "the court." Pal is not entitled to recover front pay, and NYU's motion for summary judgment on Pal's request for front pay is granted.

**VI. Back Pay**

It is undisputed that back pay is recoverable under § 740(5). See Scaduto,180 A.D2d at 460, 579 N.Y.S.2d at 382. NYU argues that Pal has failed to show that she is entitled to recover back pay beyond the balance of her contract with NYU because she has not established a causal connection between her termination and her subsequent inability to secure a position as a surgeon. (Def.'s Mem. in Supp. Mot. Summ. J. ("Def.'s Mem.") at 21.) According to NYU, "it cannot be disputed that there are many possible factors that could cause Plaintiff to have difficulty in securing a bariatric surgeon position." (Id.) This is entirely true, but surely a substantial factor could be her termination.

Pal testified that after she disclosed that she had been terminated by NYU to several potential employers, she was dropped from consideration and had offers of employment withdrawn. Pal's contract with NYU ended in June, 2006. While in July, 2007, Pal ultimately completed a fellowship in bariatric surgery at New Jersey Bariatrics, P.C., she has submitted the report of an expert in economics which sets forth the compensation Pal would have received after the end of her NYU fellowship had she not been terminated. (Shapiro Report, Krebs Decl., Ex. 76.) This, at a minimum, raises a question of fact regarding the compensation Pal would have received during the thirteen months from June, 2006, through July, 2007, had she been able to complete her

fellowship with NYU. Accordingly, NYU's motion for summary judgment on the issue of back pay is denied.[5]

**VII. Jury Demand**

NYU moves pursuant to Fed. R. Civ. P. 39(a)(2) to strike Pal's request for a jury trial. Under New York law, Pal is not entitled to a jury trial, and because her § 741 claim is equitable in nature, the Seventh Amendment does not guarantee her a trial by jury. (Def.'s Mem. at 17-18.) As noted, § 741 is enforced through an action under § 740(4), and the relief available in such an action is set forth in § 740(5). Section 740(5) states that "<u>the court</u> may award relief as follows . . . ." § 740(5) (emphasis added). Given this statutory directive, and the fact that "only equitable relief such as injunction, reinstatement, back pay and the like are available," § 740 actions are tried to the court, and not to a jury. <u>Scaduto</u>, 180 A.D.2d at 458-60, 579 N.Y.S.2d at 381-82; <u>see</u> <u>also</u> <u>McGrane v. The Reader's Digest Ass'n., Inc.</u>, 822 F. Supp. 1044, 1045 (S.D.N.Y. 1993) ("New York's "whistle blower" statute (N.Y. Labor Law § 740) provides for judicial enforcement . . . it provides for reinstatement and similar equitable relief but precludes suits for tort-like damages.").

Pal apparently concedes that she is not entitled to a jury trial under New York law, but asserts that whether the Seventh Amendment guarantees her a trial by jury is a question of federal, not state, law. <u>See</u> <u>Simler v. Conner</u>, 372 U.S. 221, 222 (1963) ("the characterization of . . . [a] state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law."). This

---

[5] NYU argues that Pal cannot recover back pay in addition to being reinstated because such relief would amount to double recovery. (Def.'s Mem. at 20-21.) Pal concedes as much, and states that she does not seek reinstatement in addition to back pay. (Pls.' Opp'n at 25). Even assuming Pal succeeds at trial, at this juncture the Court need not determine whether back pay or reinstatement is the appropriate form of relief.

13

Court has, however, previously held – as a matter of federal law – that actions under § 740 are equitable in nature and thus outside the purview of the Seventh Amendment.

In Majer v. Metropolitan Transportation Authority, No. 90 Civ. 4680(LLS), 1992 WL 11095, at *3 (S.D.N.Y. May 7, 1992), the Court observed that the relief provided for in § 740(5) is analogous to the relief that was available under Title VII prior to its amendment in 1991. See 42 U.S.C. § 2000e-5(g),(k) (1988).[6] Noting that "'[i]t is well established that because the relief traditionally available under Title VII is equitable in nature, such actions are tried to the court[,]'" Majer, 1992 WL 11095, at *3 (quoting Song v. Ives Labs., Inc., 957 F.2d 1041, 1047-48 (2d Cir. 1992)), the Court held that "[u]nder principles of federal law . . . [the plaintiff's claim under § 740] is an equitable claim." Id. The Court then struck the plaintiff's demand for a jury trial. Majer, 1992 WL 11095, at *3; see also Clark v. TRW, Inc., 921 F. Supp. 927, 936 (N.D.N.Y. 1996) (considering claim under § 740 and holding that "plaintiffs are not entitled to a jury trial."). The analysis in Majer is sound; Pal is not entitled to have her claim tried to a jury and NYU's motion to strike Pal's jury demand is granted.

---

[6] In 1991, Congress passed the Civil Rights Act of 1991, which amended Title VII to permit plaintiffs to recover compensatory and punitive damages and authorized trial a by jury for those claims. 42 U.S.C. § 1981a(a)(1), (c).

## CONCLUSION

For the foregoing reasons, NYU's motion for summary judgment is DENIED on the issues of liability and back pay; and GRANTED on the issue of front pay. NYU's motion to strike Pal's jury demand is GRANTED; the jury demand is STRICKEN. The Clerk is directed to close the motion.

Dated: New York, New York
January 25, 2010

SO ORDERED

PAUL A. CROTTY
United States District Judge