




# EVALUATION, CORRECTIVE ACTION, AND DISCIPLINARY POLICY FOR RESIDENTS

Revised/Effective: 11/08/05
Reviewed: 11/05
Supersedes: "Corrective Action and Disciplinary Policy for Residents"
Originally adopted: Not Available
Approved by: Graduate Medical Education Committee
Web address: http://www.med.nyu.edu/housestaff/PDguide/public/CorrectiveActionPre.htm

## I. Preamble

The Accreditation Council for Graduate Medical Education (ACGME) requires a written set of policies and procedures[1] for resident evaluation and for implementing corrective and/or disciplinary action when a resident's performance fails to meet required standards. This includes the criteria for any adverse action, such as placing a resident on probation or terminating a resident whose performance is unsatisfactory. The procedures are designed to be fair to residents, patients under care, and the training program and are applicable to all residents in training at New York University School of Medicine/NYU Hospitals Center ("NYU"). In this document, all references to residents shall include fellows.



## II. Evaluation

A. **Responsible Official.** The Director of Residency Training ("Director") is responsible for the evaluation and discipline of each resident in his/her program. A resident whose performance is deemed less than satisfactory should be notified of that conclusion, both verbally and in writing, as soon as it is determined, in accordance with the provisions of *Section IV.B., Written Warning with Remediation*.

B. **Frequency.** Each resident shall be formally evaluated in writing at least semi -annually[2] and shall meet with the Director or his/her designee at that time to discuss the resident's performance. The Director may conduct any supplemental assessments s/he deems necessary; moreover, there may be program-specific requirements for more frequent evaluations. In addition to preparing at least semi -annual evaluations, the Director must prepare a final summative written evaluation at the time of the resident's completion of or termination from the program.

[1] ACGME, *Institutional Requirements: Addition of General Competencies ("IR")*, effective 7/1/02, www.acgme.org/IRC/Ircpr702.asp, web page 4: "The sponsoring institution must have written policies and procedures for the recruitment and appointment of residents that comply with the requirements listed below, and it must monitor the compliance of each program with these procedures."
[2] ACGME, *Common Program Requirements ("CPR")*, effective 7/03, www.acgme.org/req/commonreqs.asp, web page 5.
Page 2 of 11

C. **Maintenance of the Records.** The Director shall maintain an evaluation file for each resident in his/her department ("Director's file"). A copy of each formal written evaluation and the resident's final, summative evaluation shall be kept on record in that file. Copies of the final evaluation shall be forwarded to the NYU Office of House Staff Affairs and to all





relevant Hospital Medical Directors.

D. **Residents' Rights.** The ACGME *Common Program Requirements* stipulate that evaluations maintained in the resident's department file must be accessible to the resident.[3] If a resident disagrees with or elects to comment on statements included in a written evaluation in his/her file, the resident has the right to submit a written response, which shall become part of the resident's department file.

E. **Basis for Evaluations.** Each resident shall be evaluated based on written and oral feedback from clinical supervisors, administrative supervisors, and course instructors at NYU and all affiliated sites. Evaluations shall be based on the written goals and objectives of the residency program and on the assessment of a resident's specific knowledge, skills, and attitudes[4] in each of the following areas:

1. Professional competence, clinical performance, and judgment including, but not limited to:

a. *Patient care* that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health;

b. *Medical knowledge* about established and evolving biomedical, clinical, and cognate (e.g., epidemiological and social-behavioral) sciences and the application of this knowledge to patient care;

c. *Practice-based learning and improvement* that involves investigation and evaluation of the resident's patient care, appraisal and assimilation of scientific evidence, and improvements in patient care;

d. *Interpersonal and communication skills* that result in effective information exchange and teaming with patients, their families, and other health professionals;

e. *Professionalism*, as manifested through a commitment to carrying out professional responsibilities, adherence to ethical principles, and sensitivity to a diverse patient population; and

f. *Systems-based practice*, as manifested by actions that demonstrate an awareness of and responsiveness to the larger context and system for health care, and the ability to effectively call on system resources to provide care that is of optimal value.[5]

2. Compliance with established practices, rules, regulations, procedures,[6] and policies of NYU.

[3] FERPA, www.ed.gov/offices/OM/fpco/ferpa/ferparegs.html#991, web pages 6 and 7, "Education records"; and ACGME, *Common Program Requirements*, effective 7/03, www.acgme.org/req/commonreqs.asp, web page 5.

[4] ACGME, *IR*, web page 5: "Institutions must ensure that each program has defined, in accordance with the Program Requirements, the specific knowledge, skills, and attitudes required and provide educational experiences as needed in order for their residents to demonstrate the following."

[5] ACGME, ibid., web page 5, "B. Resident Participation in Educational Activities," Section 1, a through f.

[6] ACGME, ibid., web page 6, "C. Resident Support, Benefits and Conditions of Employment, "3. [...] Institutions must ensure that residents adhere to established practices, procedures, and policies of the institution."



3. Compliance with established practices, rules, regulations, procedures, and policies of any off-site and affiliate clinical rotations.





4. Completion and verification of educational and training requirements.

5. Compliance with standards of professional conduct as set forth in New York State law[7] and/or applicable codes of professional ethics.

6. In addition, the resident must:

a. Develop a personal program of learning to foster continued professional growth with guidance from the teaching staff;

b. Participate fully in the educational and scholarly activities of their program and, as required, assume responsibility for teaching and supervising other residents and students;

c. Participate in appropriate institutional committees and councils whose actions affect their education and/or patient care;

d. Submit to the program director or to a designated institutional official at least annually confidential written evaluations of the faculty and of the educational experiences.[8]

7. Each resident also must participate actively in scholarly activity. Scholarship is defined as one of the following:

a. The scholarship of discovery, as evidenced by peer-reviewed funding or publication of original research in peer-reviewed journals.



b. The scholarship of dissemination, as evidenced by review articles or chapters in textbooks.

c. The scholarship of application, as evidenced by the publication or presentation at local, regional, or national professional and scientific society meetings (e.g., case reports or clinical series).

d. Active participation in clinical discussions, rounds, journal clubs, and research conferences in a manner that promotes a spirit of inquiry and scholarship; the offering of guidance and technical support (e.g., research design, statistical analysis) for residents involved in research; and the provision of support for resident participation, as appropriate, in scholarly activities.[9]

[7] *New York State Education Law*, Sections 6530, http://www.health.state.ny.us/nysdoh/opmc/laws/6530.htm; and 6531, http://www.health.state.ny.us/nysdoh/opmc/laws/6531.htm.
[8] ACGME, ibid., web pages 5 and 6, "B. Resident Participation in Educational Activities," Section 2, a through d.
[9] ACGME, *CPR*, web pages 6 and 7, "C. Scholarly Activities," Section 1, a through d.
Page 4 of 11

## III. Physician Impairment

If, at any time, the Director has reasonable cause to suspect that a resident's behavior is altered because of a physical or mental impairment or the use of drugs, narcotics, or alcohol, the resident shall, at the Director's request, submit to a physical and/or mental examination by a





nurse practitioner and/or physician(s) acceptable to the NYU Hospitals Center Employee Health Service . The Director shall, prior to making such request, consult with the NYU Office of House Staff Affairs. The purpose of the examination(s) shall be to determine if the resident is free from health impairments which pose potential risk to patients or personnel or which may interfere with the performance of the resident's clinical duties. The examination shall include, but not be limited to, a breathalyzer, urinalysis, blood, and/or other similar tests to determine if drugs, narcotics, and/or alcohol are in the resident's system.

• Reasonable cause shall include, but not be limited to: unsatisfactory, excessive, or deteriorating attendance record; declining productivity or other unsatisfactory performance or other behavior which may be reasonably attributable to the use of drugs, narcotics, or alcohol; involvement in an on-the-job accident; accosting, striking, or assaulting an employee, patient, or visitor other than in self-defense; returning to work following participation in a drug or alcohol rehabilitation program or leave of absence; or behaving in a manner which suggests that the employee may be unfit for work and/or under the influence of drugs, narcotics, or alcohol, such as: unkempt appearance, poor hygiene; trembling, slurred speech; bloodshot or bleary eyes; complaints by patients and nurses; arguments, bizarre behavior; irritability, depression, mood swings; irresponsibility, poor memory, poor concentration; unexplained accidents or injuries to self; neglect of family, isolation from friends; DWI arrest or DUI violations; financial and/or legal problems; difficult to contact; won't answer phone or return calls; dwindling medical practice; missed appointments, unexplained absences; rounds at irregular times; loss of interest in professional activities, social or community affairs; neglect of patients, incomplete charting, or neglect of other medical staff duties; inappropriate treatment or dangerous orders; excessive prescription writing; unusually high doses or wastage noted in drug logs; noticeable dependency on alcohol or drugs to relieve stress; intoxication at social events or odor of alcohol on breath while on duty.[10]

• Failure to undergo such examination when requested shall be grounds for immediate suspension and/or dismissal from the training program in accordance with the provisions of *Section IV.A., Summary Suspension*, and *Section IV.E., Dismissal*.

A. Pending and following medical evaluation, the resident may be placed on a medical leave of absence, administratively referred for further evaluation and recommended treatment, and/or subject to disciplinary action up to and including termination of the residency. The Director shall consult with the NYU Office of House Staff Affairs and notify all relevant Hospital Medical Directors (NYU Hospitals Center, Bellevue Hospital, the VA Hospital and/or Hospital for Joint Diseases) prior to taking any such action. The Hospital Medical Director(s) shall be informed of the outcome of the evaluation. Adverse action taken under this *Section III* may be appealed upon written notice, in accordance with the provisions of *Section V, Appeals*.

[10] CPH, www.mssny.org/res_ctr/cph.htm#Committee%20for%20Physicians%27%20Health, web pages 2 and 3, "Possible Indications of Impairment."
Page 5 of 11

B. Hospitals are required to report to the New York State Office of Professional Medical Conduct (OPMC) whenever any of the following actions are taken *for reasons related in any way to alleged mental or physical impairment*: denial, suspension, restriction, termination, or curtailment of, or voluntary or involuntary resignation or withdrawal from, training, employment, association, or professional privileges, or the denial of certification of completion of training. See *Section VI, Reporting*.




C. Physicians suspected of having problems with alcohol, drugs, or mental illness, *but whose ability to practice is not impaired*, may be reported to the Committee on Physicians' Health of the Medical Society of the State of New York (CPH). All calls are confidential. CPH identifies, refers to treatment, and monitors impaired physicians. The program is voluntary and participation is confidential. The names of physicians participating in the program are not shared with OPMC without a participant's approval unless there is a failure to comply with treatment recommendations. A physician whose medical performance may be impaired, however, also must be reported to OPMC. The law does not exempt physicians from their duty to report colleagues practicing with a suspected impairment to OPMC because they have reported to CPH.

D. All licensed health professionals, including physicians, are required by state law[11] to report colleagues whom they suspect may be practicing while impaired. *Failure to report is, in itself, professional misconduct.* For physicians and residents affiliated with a hospital, the report can be made to the hospital's professional practices committee, which must then inform OPMC; in the case of residents, the report should be made to the resident's Director, the Administrative Director for NYU House Staff Affairs, and all relevant Hospital Medical Directors.

## IV. Performance Deficiencies

Upon receipt of satisfactory evaluations and compliance with all other terms of the House Staff Policies and Procedures,[12] each resident should expect to continue to the next level of training to program completion. If, however, a resident's performance is unsatisfactory, the Director shall notify the resident of that conclusion, both verbally and in writing, as soon as it is determined and initiate appropriate corrective and/or disciplinary action, as provided in *Section IV.B., Written Warning with Remediation*. In the ordinary course, corrective and/or disciplinary action should be imposed progressively, beginning with a written warning with plan for remediation and proceeding to probation and dismissal from the program if performance does not improve. In extraordinary cases, summary suspension may be appropriate. Prior to initiating any corrective and/or disciplinary action, the Director must consult with the Assistant Dean for Graduate Medical Education and the Administrative Director of NYU House Staff Affairs. In addition, the Director must inform all relevant Hospital Medical Directors of any corrective and/or disciplinary action initiated against the resident under this *Section IV.*

A. **Summary Suspension.** A resident may be summarily suspended from participation in the residency training program by the Director, the Department Chair, a Hospital Medical Director, or the Dean of the School of Medicine or his/her designee a) if the resident's actions or his/her continued participation in the program may constitute a threat to the welfare or safety of patients, employees, or other staff members or to the integrity of the program; or b) if his/her license or permit is suspended or revoked.

[11] *New York Public Health Law,* Sections 230 and 2803-e.
[12] http://www.med.nyu.edu/resweb/manuals.html and http://www.med.nyu.edu/housestaff/PDguide.


When a resident is summarily suspended from the program, the following procedures shall be followed:

1. The Director, in conjunction with the NYU Office of House Staff Affairs, shall provide the




CONFIDENTIAL

D 00207



resident with written confirmation of his/her suspension. The notice shall specify the deficiencies that gave rise to the suspension, the term of the suspension, and any conditions that might be imposed for resuming participation in the residency program after the period of suspension. Copies of this notice shall be maintained in the Director's and the NYU Office of House Staff Affairs' files. Copies also shall be forwarded to all relevant Hospital Medical Directors. Credit for residency training shall not be given to a resident during a period of suspension.

2. The resident shall be advised in writing of the right to appeal the suspension as provided in *Section V, Appeals*.

3. At the end of the suspension period, the Director, in conjunction with the NYU Office of House Staff Affairs, shall notify the resident in writing as to what further action, if any, is to be taken. Copies of this notice shall be maintained in the Director's and the NYU Office of House Staff Affairs' files. Copies also shall be forwarded to all relevant Hospital Medical Directors. One of the following may occur:

a. Termination of suspension, with a statement provided to the resident stating that such suspension occurred and there is no present need for additional disciplinary action;

b. Termination of summary suspension and placement of the resident on probation as specified under *Subsection C, Probation*, of this section; or



c. Termination of the resident's participation in the residency program, in accordance with *Section IV.A., Summary Suspension*, and *Section IV.E., Dismissal*.

4. A decision to suspend requires reporting to the appropriate State agency, as discussed in *Section VI, Reporting*.

B. **Written Warning with Remediation.**

1. In the event that a resident's performance is unsatisfactory and summary suspension is not appropriate, the Director, after consultation with the NYU Office of House Staff Affairs, shall issue a written warning to the resident, which must include a detailed plan for remediation. Copies of the written warning with remediation and all subsequent administrative documentation relating to this disciplinary action shall be maintained in the Director's and the NYU Office of House Staff Affairs' files. Copies also shall be forwarded to all relevant Hospital Medical Directors. The written warning may include documentary evidence, such as letters of complaint, attendance logs, reports from the licensure board, and other relevant documents and materials. The plan for remediation must include directives for additional supervision and specific instructions with clear educational goals and performance expectations.
In determining the appropriate plan of remediation, the Director shall decide which action to take based on numerous factors, such as the nature and severity of the deficiency giving rise to the need for discipline, the potential impact on patient health or safety, the impact of the resident's conduct on the program or the facility, the likelihood that the deficiency can or shall be successfully remediated, and the degree of notice and opportunity to cure that the resident has previously received.





2. At the end of the remediation period, the following may occur:



CONFIDENTIAL



a. Termination of remediation, with a statement provided to the resident stating that the conditions of remediation were satisfactorily resolved and there is no present need for further corrective action. Copies of such statement shall be maintained in the Director's and the NYU Office of House Staff Affairs' files and forwarded to all relevant Hospital Medical Directors;

b. Continuation of remediation, provided the resident has performed satisfactorily on a significant portion of his/her plan of remediation *and* the Director agrees to the assignment of an additional term of remediation. Continued remediation shall be approved for a specified period of time, with a redefinition of the problems and procedures to be followed in order to satisfy this additional term of remediation in accordance with this *Section IV,B.1.*; or

c. Imposition of a term of probation as specified under *Subsection C, Probation*, of this section.

d. Other appropriate action.

C. **Probation.** Following a summary suspension or the unsuccessful completion of a plan of remediation, the Director or his/her designee shall place the resident on probation, provided the resident's continuation in the program does not constitute a serious threat to the welfare or safety of patients, employees, or other staff members or to the integrity of the program, as follows:

1. The Director or his/her designee shall meet with the resident and present a written notice, drafted in conjunction with the NYU Office of House Staff Affairs, stating a) the term of probation (ordinarily not to exceed 6 months); b) the reasons for probation (i.e., the resident's specific actions or deficiencies that led to the recommendation for probation); and c) the conditions of probation (i.e., what the resident shall be expected to do differently and the specific measures the department will take to provide the resident the opportunity to achieve these goals). Copies of the written notice and all subsequent administrative documentation relating to this disciplinary action shall be maintained in the Director's and the NYU Office of House Staff Affairs' files. Copies also shall be forwarded to all relevant Hospital Medical Directors. The written notice shall advise the resident of the right to appeal the decision of probation as provided in *Section V, Appeals.*

2. At the end of the probationary period, the following may occur:

a. Termination of probation, with a statement provided to the resident stating that the conditions of probation were satisfactorily resolved and there is no present need for further probation. Copies of such statement shall be maintained in the Director's and the NYU Office of House Staff Affairs' files and forwarded to all relevant Hospital Medical Directors;

b. Continuation of probation for an additional specified period of time with a written redefinition of the problems and procedures to be followed in order to satisfy this additional term of probation in accordance with this *Section IV, C.1.*; or

c. Termination of the resident's participation in the residency program in accordance with *Section IV.E., Dismissal.*





3. A decision to place a resident on probation may require reporting to the appropriate State agency, as discussed in *Section VI, Reporting.*



D. **Consequences of Failure to Remediate.**

1. Denial of Academic Credit. If a resident fails to make up work missed during a summary suspension; does not satisfactorily complete remedial work during a probationary period; misses a significant component of the academic program during leave from the program; or has otherwise failed to make sufficient academic progress, the Director may require the resident to repeat all or part of the academic year's work.

2. Dismissal. Termination of the resident's participation in the residency program in accordance with *Section IV.E., Dismissal.*

E. **Dismissal**

a. The Director shall recommend the resident's dismissal from the program to the Department Chair or Dean or his/her designee, if the resident has:

i. Misrepresented credentials upon which s/he had been accepted into the program;

ii. Engaged in conduct that threatens the welfare or safety of patients, employees, or other staff members or the integrity of the residency training program, or if his/her license or limited permit is revoked or suspended;

iii. Failed to meet standards for academic, clinical, or professional conduct/performance, as set forth in *Section II.E., Basis for Evaluations*, after having received written warning with opportunity to remediate.

b. The process of dismissal shall be initiated by recommendation of the Director after consultation with the NYU Office of House Staff Affairs and notification to all relevant Hospital Medical Directors. The Department Chair shall make the final decision to dismiss in consultation with the Director and/or the Dean or his/her designee and shall record the recommendation and the reasons therefor in writing.

c. The resident shall receive a copy of the recommendation for dismissal and the reasons therefor. S/he also shall receive notice of his/her right to appeal, as provided in *Section V, Appeals.* Copies of the recommendation for dismissal and all subsequent administrative documentation relating to this disciplinary action shall be maintained in the Director's and the NYU Office of House Staff Affairs' files. Copies also shall be forwarded to all relevant Hospital Medical Directors.

d. If the resident does not request a hearing, the recommendation for dismissal shall be final and effective as of the date of receipt by the resident, and the decision to dismiss shall not be subject to further review, in accordance with *Section V, Appeals.*

e. If a resident is dismissed before the completion of his/her academic year, the Director shall determine the number of months' credit to be given the resident for that academic year.





f. A decision to dismiss requires reporting to the appropriate State agency, as discussed in *Section VI, Reporting*.

F. **Notification.** Any action taken by the Director under this *Section IV* must be in conjunction with the Assistant Dean for Graduate Medical Education and the Administrative Director of NYU House Staff Affairs and with notice to all relevant Hospital Medical Directors. It shall be the responsibility of the Assistant Dean for Graduate Medical Education to advise the Graduate Medical Education Committee of all such actions. All notice provided to the relevant Hospital Medical Directors pursuant to this policy shall be in the form of a hard copy written document and not e-mail.



# V. Appeals

A. Neither the decision to place a resident on a plan of remediation nor the plan of remediation itself is appealable.

B. The decision to summarily suspend, place on probation, not advance, deny academic credit or dismiss a resident is appealable, as follows:

1. The resident must submit a written request for a hearing to his/her Department Chair within seven (7) calendar days after his/her receipt of written notice of an appealable adverse decision or recommendation. If no request is submitted within such seven-day period, the Director's decision shall become final and not subject to further review.

2. The Dean or his/her designee in consultation with the Department Chair, shall appoint an ad hoc Appeals Committee. The Appeals Committee shall consist of two attending physicians, each of whom hold faculty appointments in the New York University School of Medicine, and two residents, none of whom have had prior direct involvement in the proceedings with respect to the resident.

3. The Appeals Committee shall be charged to review and make a recommendation to the Dean or his/her designee on the following issues:

a) Was the decision of the department or division made substantially in compliance with the procedures set forth in the Evaluation, Corrective Action and Disciplinary Policy for Residents?
b) Was the decision of the department or division made arbitrarily and capriciously or in bad faith or in violation of anti-discrimination or other laws or regulations?

It is not the role of the Appeals Committee to substitute its academic judgment for the academic judgment of the department or division. If the Appeals Committee determines the answer to a) is yes and the answer to b) is no, the Appeals Committee should uphold the decision of the department or division. If the Appeals Committee determines that the department has failed to substantially comply with the procedures of the Evaluation, Corrective Action and Disciplinary Policy for Residents or that the decision of the department was made arbitrarily and capriciously or in bad faith or in violation of anti-discrimination or other laws or regulations, the Appeals Committee shall make an appropriate recommendation for remedy or reversal.





CONFIDENTIAL

4. The Appeals Committee shall hold a hearing in a timely fashion. The resident shall receive at least three (3) calendar days' prior notice of the hearing. Such notice shall include a statement of reasons(s) for the department or division's decision to summarily suspend, place on probation, not advance, deny academic credit or dismiss the resident. The Director, the NYU Office of House Staff Affairs, and all relevant Hospital Medical Directors shall receive copies of the notice.

5. The Appeals Committee shall make rules it deems necessary to assure prompt, fair, and expeditious handling of the appeal. The Committee shall be permitted to have legal counsel present during the hearing. The rules of law relating to the examination of witnesses or presentation of evidence shall not apply. Any relevant matter upon which responsible persons may rely on the conduct of serious affairs may be considered.

6. The Appeals Committee shall conduct interviews and review documents, including medical records, as the Appeals Committee deems necessary or helpful in its conduct of the investigation. A recording of all interviews shall be made. The Appeals Committee may require a physical and/or mental evaluation of the resident in any case where the Appeals Committee has reason to consider the physical or mental competency of the resident. Appropriate consultants shall carry out such evaluation, and a report of the evaluation shall be forwarded to the resident as well as to the Appeals Committee.

7. The Appeals Committee shall be authorized to recommend that the charges or proposed disciplinary action raised against the resident be modified.

8. The physical presence of the resident for whom the hearing has been scheduled shall be required. Failure to appear without good cause shall be deemed a waiver of the resident's right to the hearing provided in this section, shall be considered an acceptance of an adverse decision, and is final.



9. At the hearing the resident may elect to be accompanied or represented by an attorney or other persons of his or her choice. The role of this representative shall be limited to:

> (a) providing advice and counsel to the resident; and (b) addressing the members of the Appeals Committee. The role of the representative shall not include the questioning of witnesses. The Appeals Committee may, in its discretion, further define, expand, or limit the role of any such representative.

10. The resident (or his/her representative) shall have the right to present the resident's position to the Appeals Committee, together with such other documentation as the resident may wish. The resident may suggest witnesses who have information relevant to the issue under appeal. . It shall be within the sole discretion of the Appeals Committee to determine if the witnesses will be interviewed.

11. Following the hearing, the Appeals Committee shall submit to the Dean or his/her designee a written report and recommendation, which may include a recommendation that the proposed charges or disciplinary action be modified. The resident and the Director, the NYU Office of House Staff Affairs, and all relevant Hospital Medical Directors shall receive copies of the report for their files.



12. The Dean or his/her designee shall issue a final written decision within seven (7) calendar days after receipt of the Appeals Committee's report. The resident and the Director, the NYU Office of House Staff Affairs, and all relevant Hospital Medical Directors shall receive copies of the decision for their files.

13. The Appeals Committee shall forward the record of its proceedings and interviews to the Dean. The proceedings and records of the Appeals Committee and the Dean's decision shall be, so far as possible, confidential, but shall be retained as an institutional record.

14. The decision of the Dean or his/her designee is final and, therefore, not subject to further appeal.

## VI. Reporting

A. Whenever the Director takes any action under *Section IV, Performance Deficiencies*, s/he shall notify the Assistant Dean for Graduate Medical Education, the Administrative Director of NYU House Staff Affairs, and all relevant Hospital Medical Directors of the action taken and the circumstances surrounding it, as well as the ultimate disposition of the matter. It shall be the responsibility of the Assistant Dean for Graduate Medical Education to advise the Graduate Medical Education Committee of all such actions.

B. Hospitals are required, under § 405.3 (e), *Codes, Rules and Regulations of New York State*, to report to the OPMC any denial, suspension, restriction, termination, or curtailment of training, employment, association, or professional privileges or the denial of certification of completion of training of any physician licensed or registered by the New York State Department of Education for reasons related in any way to any of the following:

1. Alleged mental or physical impairment, incompetence, malpractice, misconduct, or endangerment of patient safety or welfare;

2. Voluntary or involuntary resignation or withdrawal of association or of privileges with the Hospital to avoid the imposition of disciplinary measures; and

Page 11 of 11

3. The receipt of information concerning a conviction of a misdemeanor or felony. The report must be made in writing to OPMC, with a copy to the appropriate area administrator of the New York State Office of Health Systems Management, within 30 days after the taking of such action, and must include:

a. The name and address of the individual;

b. The profession and license number;

c. The date of the Hospital's action;

d. A description of the action taken; and

e. The reason for the Hospital's action or the nature of the action or conduct which led to the resignation or withdrawal and the date thereof. 13





C. In cases involving unlicensed physicians practicing under a limited permit or serving in a clinical fellowship or residency, the Hospital must report to the New York State Education Department Office of Professional Discipline.

D. All licensed health professionals, including physicians, are required by state law to report colleagues whom they suspect may be guilty of misconduct as defined in New York State law.[14] Failure to report suspected instances of misconduct is, in itself, misconduct. For physicians and residents affiliated with a hospital, the report can be made to the hospital's professional practices committee, which must then inform OPMC; in the case of a resident, the report shall be made to the resident's Director, the Administrative Director for NYU House Staff Affairs, and all relevant Hospital Medical Directors. If the colleague is not affiliated with a hospital, a report can be made to the county medical society, which will be responsible for reporting to OPMC. If a health professional is uncertain whether specific actions or behaviors constitute misconduct, s/he may request advice from OPMC without revealing the name of the practitioner. Once advice is provided, the health professional who requested the advice is required to follow it.

E. Practitioners suspected of having problems with alcohol, drugs, or mental illness, *but whose ability to practice is not impaired*, may be reported to the Committee on Physicians' Health of the Medical Society of the State of New York (CPH). All calls are confidential. CPH identifies, refers to treatment and monitors impaired physicians. The program is voluntary and participation is confidential. The names of physicians participating in the program are not shared with OPMC without a participant's approval unless there is a failure to comply with treatment recommendations. A physician whose medical performance may be impaired, however, also must be reported to OPMC. The law does not exempt physicians from their duty to report colleagues practicing with a suspected impairment to OPMC because they have reported to CPH.

F. Nothing in this policy relieves the institution of its obligations to report incidents of possible professional misconduct under applicable laws and regulations.[15] The results of drug or alcohol testing and matters related thereto shall be kept confidential except to the extent necessary to implement this policy.

[13] *Codes, Rules, and Regulations of the State of New York*, § 405.3 (e).
[14] *New York State Education Law*. See Footnote 7.
[15] *New York Public Health Law*. See Footnote 11.





CONFIDENTIAL

D 00214