DEFENDANT'S EXHIBIT N5

# BARIATRIC FELLOWSHIP AGREEMENT

This Agreement is made this        day of **JUNE 7, 2006** between New Jersey Bariatrics, P.C.. ("Employer"), having an office at 4250 U.S. Route 1, Monmouth Junction, New Jersey, 08852, and Neelu Pal, M.D. ("Employee"), residing at 20 River Court #809, Jersey City, New Jersey 07310

## WITNESSETH

WHEREAS, Employee is duly licensed to provide medical care under the laws of the State of New Jersey and specializes in general and bariatric surgery; and

WHEREAS, Employer desires to employ Employee, and Employee desires to accept some employment.

NOW, THEREFORE, in consideration of the promises contained herein, the parties agree as follows:

1. **Employment.** Employer hereby employs Employee, and Employee hereby accepts the employment by the Employer, as a Fellow in the practice of general and bariatric surgery, subject to the terms and conditions set forth in this Agreement.

2. **Employment Term.** The term of employment shall be for a period of one year, commencing July 26, 2006, and ending July 25, 2007, unless sooner terminated in accordance with the provisions of this Agreement. This Agreement shall be conditioned upon Employee becoming duly licensed in the State of New Jersey, his acquisition of medical surgical privileges at the Medical Center at Princeton, and notwithstanding the start date set forth above, the employment relationship established by this Agreement shall not commence prior to such license and privilege being obtained. Employer agrees to use its best efforts to assist the expeditious processing of the hospital privileges set forth herein.

3. **Credentials.** Employee shall at all times maintain a full and unconditional current license to practice medicine in the State of New Jersey, current narcotics numbers issued by the State of New Jersey and federal government, and shall be a provider eligible for participation in Medicare. The parties shall engage in the practice of medicine in accordance with the Principles of Medical Ethics at the American Medical Association. Employee shall immediately notify Employer of any actions that affect Employee's license, eligibility for participation in the

reimbursement programs, or medical staff privileges at any hospital in which employee exercises privileges.

4. **Duties of Employee.**

   4.1. Employee shall render medical services on a full-time basis as Fellow of and as required by Employee to Employer from time to time, including but not limited to treating patients in Employer's office and at the Medical Center at Princeton. Employee shall perform such additional duties as may be assigned by Employer from time to time consistent with the responsibilities of other full-time Bariatric Surgical Fellows employed by the Employer.

   4.2. All services provided by Employee shall be performed to the best of Employee's ability in accordance with such standards and policies as may be set forth in writing by Employer and in strict conformance with currently approved medical methods and practices, subject to Employee's reasonable independent medical judgment. Employee shall comply with Employer's written policies and business practices, now existing or later established.

   4.3. Physician shall maintain adequate and proper medical records with respect to all professional services he renders in compliance with Employer's written policies. All services provided by Employee shall be provided in accordance with such written standards and policies as may be set by Employer and in strict conformance with the currently approved medical methods and practices, and shall be provided in a competent and professional manner and in conformance with all government requirements. Employee shall perform said services subject to the direction of the Employer and in accordance with Employee's independent professional judgment as provided in Section 4.2 above.

5. **Compensation**

   5.1. As full compensation for the services rendered pursuant to this Agreement, Employer shall provide Employee with an annual salary of $50,000.$^{00}$ which includes compensation to Employer of expenses involved in obtaining his visa extension.

   5.2 All outside income generated by Employee engaging in activities related to the practice of medicine shall belong to the Employer. From time to time, after obtaining the prior written consent of the Employer, Employee may generate and retain income for himself or herself from outside services not related directly to the practice of medicine, including without limitation lecturing and writing for medical journals, provided such activities do not, in the reasonable discretion of the Employer, interfere with the Employee's duties to and on behalf of the Employer. Employee shall indemnify and hold Employer harmless from any and all claims, judgments, or expenses of any kind, including counsel fees arising out of any activities performed pursuant to this section.

5.2. Employee assigns to employer all of his rights to bill and collect fees and charges for the professional services renders pursuant to this Agreement, and assigns to Employer all of his right to the proceeds thereof. Employee agrees to enter into all agreements and sign all verifications and certifications necessary to obtain reimbursement for services rendered by him pursuant to this Agreement.

6. **Scheduling.** Employer shall prepare a schedule at least one week in advance of each month, indicating at which of Employer's offices Employee shall provide office hours, as well as a surgical schedule to the extent known. Employee shall comply with such schedule and shall immediately notify Employer whenever Employee is unable to provide services as required by the schedule due to illness or other reason.

7. **Benefits.**

   7.1. Vacation. During the initial term of this Agreement, Employee shall be allowed two weeks vacation. Leave for job interviews, board examinations and exam prep courses will be included in the vacation time. The EMPLOYEE shall give the EMPLOYER three (3) weeks advance notice in writing of the first day of planned vacation to allow EMPLOYER to make appropriate contingency work plans.

   7.2. Health Insurance Coverage. During employment, EMPLOYER shall reimburse EMPLOYEE for the premium paid by him for continued participation in his previous employer's health care insurance coverage. Upon termination of that coverage, EMPLOYER shall offer alternative health insurance coverage on such terms and such contributions as the EMPLOYER sees fit.

   7.3. Professional Fees and Continuing Education.

   7.3.1. Employer will reimburse all costs associated with Employee's application to designated hospitals for medical staff privileges, all hospital fees to continue such privileges, all licensure fees at the successful completion of the fellowship.

   7.3.2. Employee is provided 5 days for CME (continuing medical education) and shall be reimbursed upon presentation of appropriate receipts, up to $2,000.00 for Employee's costs incurred for CME activities. EMPLOYEE shall give EMPLOYER three (3) weeks advance notice of such activities in writing. Time spent in CME endeavors will not be deducted from vacation time.

   7.4. Telephone Expenses. Employer will provide Employee a beeper.

period of time during which such breach or breaches should occur, and in the event Employer should be required to seek relief from such breach in any court or other tribunal, then the covenants shall be extended for a period of time equal to the pendency of such proceedings, including all appeals.

9.6 Each of the parties hereto agrees that the remedy at law for any breach of the foregoing shall be inadequate and the Employer shall be entitled to injunctive relief, in addition to any other remedy it might have. The parties agree that any proceeding shall be ventured in the Superior Court, Middlesex County, New Jersey.

9.7 In the event of a breach of any part of this section, the parties agree that the damages that may be suffered by Employer would be difficult to accurately estimate. Therefore, the parties agree that Employee, at Employer's option, shall be obligated to pay as a liquidated amount, and not as a penalty, a sum equal to forty (40%) percent of the amount collected by Employer for work performed by Employee during the year prior to the termination of this Agreement. In the event the Agreement is terminated prior to the end of the first year of employment, the liquidated sum related to a breach of the restrictive covenants contained herein shall be based upon forty (40%) percent of the sums collected for the work performed by Employee during period of employment. This liquidated damages agreement shall be in addition to and not in lieu of Employer's additional rights in law or in equity, including but not limited to injunctive relief as set forth elsewhere herein.

9.8 Employee specifically agrees that all proprietary information of Employer, including but not limited to patient records, patient lists, billing records, and office management systems, whether maintained in hard copy of electronically, shall remain the property of Employer and many not be accessed, retained, copied, or used in any manner by Employee subsequent to severance of his employment.

## 10. Termination.

10.1. Employee's Right to Terminate. Employee may terminate this Agreement at any time, with or without cause, upon giving Employer six (6) months written notice, unless otherwise agreed to in writing by Employer.

10.2. Notwithstanding any other provision contained in this Agreement, should Employer, in its discretion, determine that Employee has failed to satisfactorily perform his duties, Employer may terminate this Agreement immediately upon presentation of a written notice of termination to Employee, provided, however, that prior to presenting such notice, Employer shall provide Employee with notice of the deficiency and allow at least thirty days in which to correct and overcome it. This proviso shall not be interpreted as limiting any other termination clause contained in this Agreement.

11. **Notices.** No notice, request, consent, approval, waiver, or other communication under this Agreement shall be effective unless, but any such communication shall be deemed to have been given if, the same is in writing and hand-delivered or mailed by registered or certified mail, return receipt requested postage prepaid, to the other party at the following addresses:

   Employer:   New Jersey Bariatrics
               4250 U.S. Route 1 Suite 1
               Monmouth Junction, NJ 08852

   Employee:   Neelu Pal, M.D.
               20 River Court #809
               Jersey City, NJ  07310

12. **Binding Nature.** This Agreement shall be binding upon the parties hereto and their respective heirs, executors, administrators, assigns, and other legal representatives.

13. **Severability.** If any term, covenant, condition, or provision of this Agreement, or the application thereof to any person or circumstance shall at any time or to any extent be deemed invalid or unenforceable, the remainder of the Agreement, or the application of such term or provision to the persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term, covenant, condition, and provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

14. **Whole Agreement/Modification & Amendment.** This Agreement is the only Agreement between the parties and sets forth all the promises, agreements, conditions, and understandings between the parties hereto relative to the subject matter hereof, replaces and supersedes any prior employment agreement between the parties hereto, and there are no promises, agreements, conditions, and understandings, either written or oral expressed or implied, between them. Except as herein otherwise specifically provided, no subsequent alteration, modification, supplementation, revocation, change, or addition to this Agreement shall be binding upon either party unless reduced to writing and signed by each party.

15. **Waiver.** No waiver of default by any party shall be implied from any omission by a party to take any action on account of such default if such default persists or is repeated. No express waiver shall affect any default other than the default specified in the express waiver and that only for the time and to the extent started therein. No waiver of any covenant, term, or condition of this Agreement by a

8. **Malpractice Insurance.** Professional liability insurance covering services rendered by the Employee pursuant to this Agreement shall be obtained for Employee by Employer at Employer's expense.

9. **Restrictive Covenant.**

   9.1 Employee agrees that during the term of this Agreement and for a period of ~~eighteen (18)~~ 11 (eleven) months after the termination hereof, he shall not, directly or indirectly, either as an employee, owner, partner, shareholder, director, consultant, or otherwise:

   A. Practice ~~general or~~ bariatric surgery within ~~thirty~~ twenty miles of any office or hospital where Employee practiced on a regular basis.
      (1) The restrictions set forth herein as paragraph 9.1.A may be waived at the termination of the Fellowship by written consent of Employer.
   B. Solicit any patients of the Employer.

   9.2 If any of the restrictions set forth above should, for any reason whatsoever, be declared invalid or unreasonable by a court of competent jurisdiction, the validity of enforceability of the remainder of such restrictions shall not thereby be adversely affected, and all provisions shall be enforced to the fullest extent allowed by the law.

   9.3 Each of the parties hereto recognizes that the foregoing territorial and time limitations are properly required for the adequate protection of the business of Employer, and that in the event that any such territorial or time limitation is deemed to be unreasonable by a court of competent jurisdiction, then each party agrees and submits to the reduction of either said territorial or time limitation to such area or period as said court shall deem reasonable.

   9.4 Employee understands and agrees that the time and geographical limitations are reasonable and necessary to protect the legitimate business of Employer. It is further agreed that this covenant will be regarded as divisible, and if any part of the covenant is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a geographical range, it shall be interpreted to extend over a maximum period of time or geographical range as to which it may be enforceable. Employee acknowledges and agrees that he has multiple avenues of employment available which are not directly competitive with Employer and that he will not claim that he cannot earn a living or provide services to patients due to the restrictions agreed to herein even if it means relocating to another geographical area.

   9.5 In the event Employee violates the aforementioned restrictive covenant, then the time limitation thereof shall be extended for a period of time equal to the

4

party or parties shall be construed to be a waiver of any subsequent breach of the same covenant, term, or condition. The consent or approval by any party or parties shall not be deemed to waive or render unnecessary the consent to or approval of said party or parties of any subsequent or similar acts by a party or parties.

16. **Governing Law.** This Agreement and the performance hereof shall be governed, interpreted, construed, and regulated by the laws of the State of New Jersey.

17. **Gender and Numbers.** Wherever herein the singular number is used, and the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the use and context shall require.

18. **Captions.** The captions to the various paragraphs and/or sections of this Agreement are descriptive only and will not be construed to have any legal or interpretive effect.

19. **Records and Files.** All records of patients, financial records, and lists of patients of Employer shall remain the exclusive property of Employer and may not be removed from the premises of Employer or copied without the prior written consent of the Employer. Employee may inspect records only for the purpose of treating current patients. On termination of his employment, Employee shall not be entitled to keep or reproduce Employer's records or charts related to any patient unless that patient shall specifically request in writing that said records be transferred, or unless Employer is required by court order to do so.

20. **Assignability.** Each party's rights and obligations under this Agreement are personal and not assignable. Any purported assignment of this Agreement by either party shall be null and void without the prior written consent of the other.

**IN WITNESS THEREOF**, the parties hereto have set their hands the date first above written.

ATTEST:

_____

WITNESS:

NEW JERSEY BARIATRICS, P.C.

BY: _____
ROBERT E. BROLIN, M.D.

_____   _____